Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
3451 Via Montebello, Ste. 192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364

*Counsel for Plaintiff Ian Grimbaldeston,
and the Putative Class*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| | **CASE NO.** |
| | **CLASS ACTION COMPLAINT FOR:** |
| **IAN GRIMBALDESTON, individually, and on behalf of others similarly situated,** | **1. UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 ET SEQ.);** |
| **Plaintiff,** | **2. DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, ET SEQ.);** |
| **vs.** | **3. CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.);** |
| **SARAYA USA, INC. d/b/a LAKANTO,** | **4. BREACH OF EXPRESS WARRANTY; AND** |
| **Defendant.** | **5. QUASI-CONTRACT.** |
| | **<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Ian Grimbaldeston on behalf of himself and others similarly situated in California, by and through his undersigned counsel, hereby files this Class Action Complaint and states as follows based on investigation and information and belief:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

1.    This putative class action seeks to hold Defendant Saraya USA, Inc. doing business as Lakanto ("Lakanto" or "Defendant") responsible for materially misleading statements made on the

---

**CLASS ACTION COMPLAINT**

labels of its LAKANTO MONKFRUIT SWEETENER (the "Products" or "Product").[1]

2.     Despite numerous, prominent representations on the Product labels that the Products are a "MONKFRUIT SWEETENER" containing a "rare superfood prized for its sweetness and ability to raise chi, or life energy" the Products contain almost no monk fruit.

3.     According to independent laboratory testing commissioned by Plaintiff's counsel, the Products contain 98.85% erythritol and only 1.15% monk fruit extract.

4.     As depicted and set forth in detail herein, on the labels of the Products, Defendant prominently and repeatedly represents the Products as a premium, monk fruit sweetener (the label statements are defined below as the "Representations").

5.     Defendant intentionally makes these Representations to capitalize on consumers' desire to purchase a premium sweetener that is derived from a natural source: monk fruit.

6.     Furthermore, Defendant intentionally omits the truth—that the Products are almost completely comprised of erythritol, a chemically processed sugar alcohol with known health risks, including heart attack, stroke and digestive issues.

7.     The amount of monk fruit contained in the Products is material to reasonable consumers.

8.     Reasonable consumers of Defendant's Products, like Plaintiff, are misled to believe that they are purchasing a premium sweetener that contains a substantial amount of monk fruit when in fact they are purchasing a Product that contains 98.85% erythritol.

9.     Plaintiff and reasonable consumers have suffered economic injury based on the purchase price of the Products, which they would not have purchased or would not have purchased on the same terms if they knew the truth.

10.     Defendant has profited unjustly as a result of its deceptive conduct. Plaintiff therefore asserts claims on behalf of himself and similarly situated purchasers for violation of California consumer protection law, breach of express warranty, and quasi-contract.

---

[1] The definition of Products includes all sizes of the "Classic" and "Golden" flavors of Defendant's "MONKFRUIT SWEETENER".

**CLASS ACTION COMPLAINT**

## II.    JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

12.    This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

13.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district. *See also* Declaration of Ian Grimbaldeston Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Exh. A.

## III.    PARTIES

14.    Plaintiff Ian Grimbaldeston is a citizen of California who purchased the Products in this judicial district during the class period.  Plaintiff's claim is typical of all Class members in this regard.

15.    The advertising and labeling on the package of the Products purchased by Plaintiff, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class.

16.    The price paid by Plaintiff for the Products is typical of the price paid by members of the Class.

17.    Plaintiff relied on Defendant's Representations, as described below.

18.    Defendant Saraya USA, Inc., doing business as Lakanto, is a Utah corporation with its principal place of business in Orem, Utah.

19.    Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

**CLASS ACTION COMPLAINT**

20.    At all times material hereto, Defendant was conducting business in the United States, including in California, through its services as a manufacturer and supplier to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

21.    Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.

22.    The deceptive acts giving rise to Plaintiff's claims occurred in this jurisdiction and in this judicial district.

23.    The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

## IV.    FACTUAL ALLEGATIONS

### A.    <u>Defendant's Representations are False and Misleading</u>

24.    The following are label images of the Products at issue:




**CLASS ACTION COMPLAINT**




25. The front and back labels of the Products contain the following images and statements (collectively, the "Representations"):

    i.    On the front label, in very large all-caps, bold lettering, the statement "MONKFRUIT SWEETENER"[2];

    ii.    On the front label, a large image of what appears to be a Buddhist monk. In accordance with the vignette on the back label, the monks discovered monk fruit and used it to "increase chi" or "life energy";

    iii.    On the back label, a vignette stating: "**OVER A THOUSAND YEARS AGO** In the remote mountain highlands of Asia, a group of Buddhist monks called the Luohan

---

[2] Directly below this representation in smaller, white lettering are the words "WITH ERYTHRITOL". In addition, erythritol is included in the ingredient list, which states: "INGREDIENTS: Erythritol, Monk Fruit Extract". The disclosure that the Products contain erythritol does not remedy or excuse Defendant's misleading Representations. Despite the disclosure, reasonable consumers of Defendant's Products do not expect that the Products contain 98.85% erythritol and only 1.15% monk fruit. Instead, as set forth herein, Defendant's Representations lead consumers to believe that the Products contain a substantial amount of monk fruit, when in fact they contain almost no monk fruit.

**CLASS ACTION COMPLAINT**

achieved enlightenment and ascension through meditation and pure living. The monks discovered a rare superfood prized for its sweetness and ability to raise chi, or life energy. This sacred fruit was named monk fruit and was used for centuries to increase chi and well-being, earning it the nickname 'The Immortals Fruit.'";

    iv.    Also on the back label, the statement: "We still harvest monk fruit for Lakanto in the same pristine area according to traditional and environmental methods."; and

    v.    **DISCOVER YOUR CHI** Lakanto's mission is to bring chi to life by inspiring people to reach their highest potential in health and wellness and by creating products that are innovative, delicious, natural, nutritious, sugar-free, and healthy."

26.    These Representations are voluntary advertising statements.

27.    The Representations are not governed or required by any government or FDA regulation or requirement.

28.    Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

29.    These Representations, individually and collectively, are likely to mislead and do mislead reasonable consumers to believe that the Products contain a substantial amount of monk fruit.

30.    The Products in fact contain almost no monk fruit.

31.    Plaintiff's counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

32.    In January and February of 2025, the laboratory conducted testing for sugar alcohols by Liquid Chromatography Refractive Index Detector (LC-RID), which tests for compounds like sugars and polymers.

33.    The laboratory used the following testing methodologies, which test for sugars in food products:

    i.    AOAC official method 980.13;

    ii.    AOAC official method 982.14; and

    iii.    AACC Method 80-40.

**CLASS ACTION COMPLAINT**

34.    According to the results of the scientific testing, the Products contain 98.85% erythritol.

35.    According to the results of the scientific testing, the Products contain only 1.15% monk fruit extract.

36.    The Products contain the same ingredients and have the same composition irrespective of size or "flavor" (e.g., "classic" or "golden" flavor).

37.    Accordingly, the results of the testing commissioned by Plaintiff's counsel apply to all of the Products at issue.

**B.  Consumers Believe Monk Fruit is a Superior Sweetener**

38.    The amount of monk fruit contained in the Products is material to Plaintiff and reasonable consumers.

39.    Monk fruit sweetener is a zero-calorie sweetener derived from a natural source—monk fruit.

40.    Monk fruit is considered safe to consume and without adverse effects.

41.    In contrast to monk fruit, there are known, documented health risks associated with consumption of substantial amounts of erythritol.

42.    A specialist in preventative cardiovascular medicine led a study funded by the National Institute of Health (NIH), which found "that erythritol is closely associated with risk for 'major adverse cardiovascular events.' In other words, people who have high blood levels of erythritol are more prone to heart attacks, stroke and even death."[3]

43.    In addition, the study found: "'A serving of erythritol in common 'keto-friendly' processed food products made blood levels of erythritol go up 1,000-fold, well above the levels linked to enhanced clotting risks,' Dr. Hazen states. 'We found that the risk for clotting can be increased for several days after consumption of just one serving of artificially sweetened food containing erythritol.'"[4]

44.    Dr. Hazen also recognizes the difficulty of identifying foods that contain high levels of erythritol, even for consumers who read nutrition labels: "'We know that people buying these products

---

[3] https://health.clevelandclinic.org/erythritol

[4] *Id.*

**CLASS ACTION COMPLAINT**

are trying to do something good for their health by eating foods that are promoted as better for them. But in reality, they may be inadvertently increasing their risk for harm.'"[5]

45.    Erythritol is also known to cause stomach and digestive upset.

**C.    Plaintiff Reasonably Relied On Defendant's Representations**

46.    During the last three years, Plaintiff purchased Defendant's Products approximately every three weeks from stores located in Napa, California.

47.    Most frequently, Plaintiff purchased the "classic" variety of the Products from a Grocery Outlet store located in Napa, California.

48.    Plaintiff paid approximately $6.99 per 16-ounce bag of the Product purchased from the Grocery Outlet.

49.    Plaintiff has also purchased the Products from Target and Safeway stores located in Napa, California in the 16-ounce size.

50.    Plaintiff's most recent purchase of the Product was in or about March or April of 2025 from a Grocery Outlet store located in Napa California.

51.    Plaintiff purchased the Products for personal and family use.

52.    The Products purchased by Plaintiff bear the Representations, set forth above.

53.    Plaintiff viewed the Representations on the Product label and, acting reasonably under the circumstances, relied on the Representations.

54.    Based on the Representations, Plaintiff reasonably believed that the Products contain a substantial amount of monk fruit.

55.    Based on the Representations, Plaintiff reasonably believed that the monk fruit in the Products constitutes more than 1.15% of the Product composition.

56.    The amount of monk fruit contained in the Product as compared to the amount of erythritol contained in the Product is material to Plaintiff.

57.    As described herein, the Representations are false and misleading.

58.    Defendant knew the Representations were misleading when it made them.

---

[5] *Id.*

**CLASS ACTION COMPLAINT**

59.    Had Plaintiff known at the time of purchase that the Representations were false and misleading, Plaintiff would not have purchased the Products or would have paid less for them.

60.    Defendant continues to sell the Products bearing the Representations.

61.    Plaintiff would like to purchase the Products in the future if they contained a substantial amount of monk fruit.

62.    Plaintiff continues to suffer harm because he is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether he can purchase the Products in the future.

63.    Unless Defendant is enjoined from failing to misrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the mislabeling of the Product has been addressed and remedied.

64.    Accordingly, Plaintiff's legal remedies are inadequate to prevent future injury.

## V.    CLASS DEFINITION AND CLASS ALLEGATIONS

65.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of California and who do not claim any personal injury from using the Products (the "Class").

66.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

67.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

**CLASS ACTION COMPLAINT**

68.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

69.     **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

70.     **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether the Product Representations are, or any single representation is, false, misleading and/or deceptive;

- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising, labeling and selling the Products;

- Whether Defendant violated (i) California Bus. & Prof. Code § 17200, *et seq.*; (ii) Cal. Bus. & Prof. Code § 17500, *et seq.*; and/or (iii) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

- Whether Defendant committed a breach of express warranty;

- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and the Class; and

- Whether Defendant was unjustly enriched by its unlawful practices.

71.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

**CLASS ACTION COMPLAINT**

72. **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

73. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      a.    The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

      b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

      c.    Given the size of individual Class members' claims, few, if any, members could afford to, or would, seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

      d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

      e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

74. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for

11

**CLASS ACTION COMPLAINT**

Defendant.

75.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

76.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Unfair and Unlawful Business Acts and Practices
### (Business and Professions Code § 17200, *et seq.*)
### (*for Plaintiff and the Class*)

77.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

78.     Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . .."

79.     Plaintiff brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through its unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct.

80.     Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

### *Defendant's Conduct Constitutes a Fraudulent Business Practice*

81.     Defendant's conduct constitutes a fraudulent business practice because consumers are likely to be deceived by Defendant's Representations.

82.     Defendant was and is aware that its Representations are material to consumers.

83.     Defendant was and is aware that its Representations are misleading, as described herein.

84.     Defendant has an improper motive—to derive financial gain at the expense of accuracy

**CLASS ACTION COMPLAINT**

or truthfulness—in its practices related to the labeling and advertising of the Products.

85.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

### *Defendant's Conduct Constitutes an Unfair Business Practice*

86.    Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

87.    Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations to increase sales of the Products.

88.    Defendant was and is aware that its Representations are misleading.

89.    Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representations.

90.    Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Representations is outweighed by the harm to consumers.

91.    The Representations are optional, voluntary advertising statements.

92.    Defendant makes the Representations to increase sales of the Products to the detriment of consumers, who are misled and deceived.

93.    Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth or would not have purchased them on the same terms.

94.    Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

95.    In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

96.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

**CLASS ACTION COMPLAINT**

97.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

98.    Plaintiff and members of the Class could not have reasonably avoided injury. Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew that its Representations were misleading.

99.    Plaintiff purchased the Products with the reasonable belief that the Products contain a substantial amount of monk fruit and was misled and deceived.

### *Defendant's Conduct Constitutes an Unlawful Business Act*

100.    Defendant's misrepresentation of material facts, as set forth herein, also constitutes an "unlawful" practice because it violates California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[6]

101.    Defendant's conduct in making the Representations constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

102.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

103.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

104.    As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-

---

[6] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true;  (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

**CLASS ACTION COMPLAINT**

gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

105.    Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

### No Adequate Remedy at Law

106.    Plaintiff's legal remedy is inadequate.

107.    Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

108.    In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

109.    Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

110.    Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

111.    In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

112.    In addition, the reach of equitable relief may extend beyond that of legal damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the UCL is not statutorily limited.

113.    As a result of the business acts and practices described above, pursuant to § 17203, Plaintiff and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

114.    As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated and thus whether he can purchase the Products in the future.

**CLASS ACTION COMPLAINT**

**SECOND CAUSE OF ACTION**
**Deceptive Advertising Practices**
**(California Business & Professions Code §§ 17500, *et seq*.)**
**(*for Plaintiff and the Class*)**

115.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

116.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .." (the "FAL").

117.    Defendant violated § 17500 when it represented, through its false and misleading Representations, that the Products possess characteristics and value that they do not have.

118.    Defendant's deceptive practices and misleading advertising were designed to induce reasonable consumers like Plaintiff to purchase the Products.

119.    Defendant's uniform, material misrepresentations regarding the Products were likely to deceive, and Defendant knew or should have known that its uniform misrepresentations were misleading.

120.    Plaintiff purchased the Products in reliance on the Representations made by Defendant, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations.

121.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

122.    The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

123.    In making the Representations alleged herein, Defendant knew or should have known that the Representations were untrue or misleading, and acted in violation of § 17500.

124.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of

16

**CLASS ACTION COMPLAINT**

false advertising, as well as interests and attorneys' fees.

*No Adequate Remedy at Law*

125. Plaintiff's legal remedy is inadequate.

126. Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

127. In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

128. Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

129. Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

130. In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

131. In addition, the reach of equitable relief may extend beyond that of legal damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the FAL is not statutorily limited.

132. As a result of the business acts and practices described above, pursuant to § 17203, Plaintiff and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

133. As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated and thus whether he can purchase the Products in the future.

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(*for Plaintiff and the Class*)**

134. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

17

**CLASS ACTION COMPLAINT**

135.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

136.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

137.    The Products are "goods", as defined by the CLRA in California Civil Code §1761(a).

138.    Defendant is a "person", as defined by the CLRA in California Civil Code §1761(c).

139.    Plaintiff and members of the Class are "consumers", as defined by the CLRA in California Civil Code §1761(d).

140.    Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

141.    Defendant violated section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely and misleadingly labeled and represented, as described herein.

142.    Defendant violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the false and misleading Representations described herein.

143.    Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented as described herein.

144.    Defendant's uniform, material, misrepresentations regarding the Products were likely to deceive, and Defendant knew or should have known that its misrepresentations were untrue and misleading.

145.    Plaintiff and members of the Class relied on Defendant's Representations and could not have reasonably avoided injury.

146.    Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose.

147.    Plaintiff and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

**CLASS ACTION COMPLAINT**

148.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct.

149.    Such injury includes, but is not limited to, the purchase price of the Products and/or the improper premium price of the Products at which they were offered.

150.    Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

151.    Pursuant to California Civil Code § 1782(a), Plaintiff's counsel previously provided notice to Defendant by notice letter dated February 11, 2025 setting forth the alleged violations of the Consumer Legal Remedies Act.

152.    Despite giving Defendant more than 30-days from the date of the notification letter to provide appropriate relief for violations of the CLRA, Defendant failed to respond to the notice or to provide any such relief. As such, Plaintiff also seeks compensatory, monetary and punitive damages, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

153.    As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

### FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### (*for Plaintiff and the Class*)

154.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

155.    By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, as described herein.

156.    This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

**CLASS ACTION COMPLAINT**

157.    Defendant, through its advertising and labeling, created express warranties that the Products are a "MONKFRUIT SWEETENER".

158.    The express warranties appear on all labels of the Products and specifically relate to the goods being sold.

159.    Despite Defendant's express warranties about the nature of the Products, the Products do not comport with the Representations. Thus, the Products were and are not what Defendant represented them to be because the Products contain only 1.15% monk fruit extract.

160.    Accordingly, Defendant breached the express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

161.    Plaintiff's counsel provided Defendant with pre-suit notice of the breach of warranty by notice letter dated February 11, 2025.

162.    Plaintiff and members of the Class purchased the Products.

163.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products or the price premium paid for the Products.

164.    Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**QUASI-CONTRACT**
**(*for Plaintiff and the Class*)**

165.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

166.    By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

167.    Defendant had knowledge of such benefits.

168.    Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue    from the sales of the Products.

**CLASS ACTION COMPLAINT**

169.    Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefits were obtained by Defendant's misleading Representations and unlawful conduct.

170.    Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## PRAYER

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.    For an order awarding, as appropriate, compensatory and monetary damages, and restitution or disgorgement to Plaintiff and the Class for all causes of action;

D.    For an order awarding attorneys' fees and costs;

E.    For an order awarding punitive damages;

F.    For an order awarding pre-and post-judgment interest; and

G.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 3, 2025                         Respectfully submitted,


By: */s/ Naomi B. Spector*
    Naomi B. Spector, Esq.
    nspector@kamberlaw.com
    **KAMBERLAW, LLP**
    3451 Via Montebello
    Carlsbad, CA 92009
    Phone: 310.400.1053
    Fax: 212.202.6364

**CLASS ACTION COMPLAINT**