UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN GRIMBALDESTON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SARAYA USA, INC.,<br><br>　　　　　　Defendant. | Case No.  25-cv-05649-RFL<br><br>**ORDER DENYING MOTION TO TRANSFER VENUE AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 21, 23 |

　　　　Plaintiff Ian Grimbaldeston filed this action on behalf of himself and a putative class of California purchasers who bought one of Saraya USA, Inc.'s sugar replacement products.  (Dkt. No. 1.)  Grimbaldeston alleges violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), a breach of express warranty, and a quasi-contract claim.  Saraya seeks dismissal of the action or transfer to the District of Utah.  (Dkt. Nos. 21, 23.)  For the reasons discussed below, the motion to transfer venue is **DENIED**, and the motion to dismiss is **GRANTED** in part and **DENIED** in part.  This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

　　　　**A.**　　**Motion to Transfer Venue**

　　　　Saraya asks the Court to transfer this case to the District of Utah under 28 U.S.C. 1404(a) for the convenience of the parties and witnesses, in the interest of justice.  The parties do not dispute that this action could have been brought in the District of Utah.  Therefore, the Court considers the following factors to determine whether to grant the motion to transfer under Section 1404(a):

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011). "The burden of showing that transfer is appropriate is on the moving party." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

The first factor, plaintiff's choice of forum, weighs against transfer. Grimbaldeston resides in this district, and the injury he allegedly experienced occurred in this district. (Dkt. No. 1-1 ¶¶ 3, 6.) These facts are distinguishable from circumstances where named plaintiffs in a putative class action had no connection to the forum district, and the district lacked significant connections to the litigation. *See Rafton v. Rydex Series Funds*, No. 10-cv-1171-CRB, 2010 WL 2629579, at *2–4, (N.D. Cal. June 29, 2010). And while Saraya raises concerns about forum shopping based on Plaintiff's counsel's filing of other lawsuits in other districts (*see* Dkt. No. 23 at 11–12),[1] there is no evidence that Grimbaldeston, who resides in this district, has engaged in forum shopping.

The second and third factors, convenience of the parties and non-party witnesses, are neutral. Grimbaldeston is located in the district, while Saraya and "all of Saraya's operations and employees are located in Utah." (*Id.* at 13.) Therefore, whether the case is transferred or remains in this district, one party to the litigation will be required to travel. It is improper to transfer that burden from Saraya to Grimbaldeston. *See SkyRiver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*, No. 10-cv-03305-JSW, 2010 WL 4366127, at *3 (N.D. Cal. Oct. 28, 2010) ("the convenience of a litigant's employee witnesses [is] entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum"). With respect to non-party witnesses, while Saraya suggests that "third-party vendors and consultants" may be called as witnesses and are "much more likely to be located in Utah than in

---

[1] All citations to page numbers refer to ECF pagination.

the Northern District of California," (Dkt. No. 23 at 15), Saraya does not carry its burden to identify who those witnesses are, where they are located, and why their historical knowledge is necessary to the case. In sum, whether or not the case is transferred, this litigation will likely require the parties and non-party witnesses to travel, and the factors are therefore neutral.

The fourth factor, access to evidence, weighs slightly in favor of transfer, given the location of Saraya's headquarters in Utah. However, "[m]odern technology—which enables the transmission of many documents over large distances in little time—often renders documents' physical locations unimportant." *LRN Corp. v. RGA Reinsurance Co.*, No. 14-cv-05771, 2015 WL 13285086, at *4 (C.D. Cal. Jan. 20, 2015). Saraya does not identify any reason why most discovery could not be exchanged electronically. Therefore, this factor is given minimal weight.

The sixth factor is neutral. Although Saraya has identified a related case pending in Illinois, it does not seek transfer to Illinois. (Dkt. No. 23 at 11, 16–17.) Therefore, at present there are no cases in this district or in the District of Utah that could be consolidated with this action.[2]

The fifth and seventh factors weigh against transfer. Here, the alleged harm occurred in this district, and none is alleged to have occurred in Utah. Furthermore, the claims are brought under California law. Although Utah has an interest in curbing unlawful practices by Utah businesses, California "has a countervailing interest in protecting local residents from [unlawful] practices" by enforcing California law. *See Imran v. Vital Pharms., Inc.*, No. 18-cv-05758-JST, 2019 WL 1509180, at *6 (N.D. Cal. Apr. 5, 2019). This Court is also more likely to be familiar with California law than a federal court sitting in Utah. As to the final factor, while Saraya argues that Utah courts are less congested, the difference is not stark, and this factor alone does not weigh heavily in favor of transfer. Considering the weight given to Grimbaldeston's choice of forum, this district's interest in protecting its residents, and the importance of familiarity with

---

[2] The parties speculate as to whether the Illinois action may be transferred to Utah or California. But until the Illinois case is transferred, the fact that it is pending in Illinois does not weigh for or against the transfer of this action to Utah.

California law, Saraya has not demonstrated that the balance of convenience and interest of justice factors clearly favor transfer. The motion to transfer is denied.

B. **Motion to Dismiss**

*Reasonable Consumer Test*. Grimbaldeston's first three claims for relief arise under the UCL, FAL, and CLRA, respectively. Each is "governed by the 'reasonable consumer test.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under this standard, [the plaintiff] must show that members of the public are likely to be deceived." *Id.* (quotation omitted). Whether a representation is false or misleading to the reasonable consumer is typically a question of fact not suited to a motion to dismiss. *Id.* Therefore, the Court considers whether Grimbaldeston has plausibly alleged that a reasonable consumer would be deceived.

The complaint alleges that both products at issue, the "classic" and "golden" sweeteners ("Sweeteners"), had materially the same front and back labels during the time period at issue:




(Dkt. No. 1 at 4–5.) The back label describes the benefits of monk fruit. The back label also contains the following list of ingredients: "Erythritol, Monk Fruit Extract." The nutritional facts

4

on the back label indicate that the product contains 8 grams of "Sugar Alcohol." Grimbaldeston alleges that, through testing, a laboratory confirmed that the Sweeteners contain 1.15% monk fruit extract, and that the remaining 98.85% is made up of Erythritol. (Dkt. No. 1 ¶ 3.)

Taking this information together, Grimbaldeston has adequately alleged that a reasonable consumer would be deceived into thinking that the Sweeteners contain substantially more than 1.15% monk fruit extract. In text that is more than twice as large as any other text on the front label of the product, the Sweeteners' front label describes the product as "MONK FRUIT SWEETENER," while the words "WITH ERYTHRITOL" are approximately one third of the size and written in a lighter color. The back label describes the health benefits of monk fruit, which it calls a "superfood" and "The Immortals' Fruit." The back label does not discuss Erythritol, other than listing it as an ingredient. At the pleading stage, Grimbaldeston has alleged that the amount of monk fruit extract in the Sweeteners is *de minimis*, and that a reasonable consumer would expect the Sweeteners to contain more than a *de minimis* amount of monk fruit, given the front label and the back label discussion. *See*, *e.g.*, *Henderson v. Gruma Corp.*, No. 10-cv-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (product labeled "'GUACAMOLE' in large capital letters, in a font . . . twice as large as the smaller 'FLAVORED DIP,'" was adequately alleged to be misleading where the product "contain[d] less than 2% avocado powder").

Saraya points out that nothing on the label indicates the ingredient proportions, aside from the ingredient list, which reflects that the product contains more erythritol than monk fruit. But even taking the ingredient list into account, it is plausible that a reasonable consumer would believe that a product prominently labeled "Monk Fruit Sweetener," and extolling the benefits of the fruit, would contain more than 1.15% monk fruit. *Id.* (explaining that "for a statement to be actionable, there is no requirement that the statement be false [because] California's consumer protection laws prohibit 'advertising which, although true, is either misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public'") (quoting *Williams*, 552 F.3d at 938). Importantly, this is not a case like *Martinez v. Mead Johnson & Co.*, No. 22-cv-00213,

5

2022 WL 15053334 (C.D. Cal. Oct. 22, 2022), where the court rejected the allegation that a reasonable consumer would read the label "milk-based" to mean that milk was the *primarily* ingredient. *Id.* at *5. Rather, Grimbaldeston alleges that the Sweeteners could be reasonably expected to contain a substantial amount of monk fruit, as opposed to less than two percent. This is not an inherently unreasonable presumption. *Tobin v. Procter & Gamble Co.*, No. 23-cv-05061-JSW, 2024 WL 1560050, at *5 (N.D. Cal. Apr. 9, 2024) (finding that a prominent label stating that a product was "made with real honey," and the use of honey-related images "could plausibly convince a reasonable consumer that the Product is made with a non-negligible amount of honey").

Saraya argues that purchasers of the Sweeteners would know that a sweetener made "mostly of monk fruit" would be "cloying[ly] sweet," and that "such products must contain a larger proportion of less-sweet 'sugar alcohol'" to be a "one-to-one sugar replacement." (Dkt. No. 21 at 18–19.) Therefore, it argues that this case is analogous to *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021). There, the Ninth Circuit affirmed the dismissal of a suit brought by purchasers of a product labeled "100% Manuka honey" who allegedly understood the label to guarantee that the honey was derived from a single floral source. *Id.* at 882–85. The Ninth Circuit acknowledged that the phrase "100% Manuka honey" was ambiguous, but held that a reasonable consumer would understand that bees are foragers and cannot be contained to a single floral source. *Id.* at 883. Therefore, a reasonable consumer could not be deceived into believing something they already knew was an "impossibility." *Id.* at 883–84 (comparing the belief to thinking that Froot Loops contained real fruit).

Here, the Court cannot determine as a matter of law that a reasonable consumer would know that it is "impossible" for the Sweeteners to contain a substantial amount of monk fruit. While bee pollen collection is undisputedly common knowledge, it is plausible that an average consumer of sugar replacements would be unaware of the relative sweetness of monk fruit, even if they are aware of the supposed health benefits of monk fruit and specifically sought out a monk fruit product. *Contrast Husain v. Campbell Soup Co.*, No. 24-6041, 2025 WL 3539131, at

6

*1 (9th Cir. Dec. 10, 2025) (implausible that a reasonable consumer would believe "kettle cooked" chips referred to boiling or steaming them). And even assuming a reasonable consumer knew that monk fruit is "cloyingly sweet," a reasonable consumer might plausibly have expected that the Sweetener was not primarily monk fruit while also expecting the product to have a non-negligible amount of monk fruit. Ultimately, this is not a case, like *Moore*, where Grimbaldeston's interpretation of the packaging would require the consumer to believe in what everyone knows is an "impossibility."

Finally, Saraya argues that because the "back label discloses that for a serving size of 8 grams, there are 8 grams of sugar alcohol (erythritol) . . . [it] fully discloses that approximately 8 grams of each 8-gram serving is erythritol, not monk fruit." (Dkt. No. 21 at 20.) Importantly, however, the word "erythritol" is not part of the "sugar alcohol" disclosure. Therefore, for the nutritional facts to cure the plausibly misleading impression created by other portions of the label, it would require a reasonable consumer to know that only erythritol—and not monk fruit extract—contains sugar alcohol, and then connect the dots to determine that nearly all of the Sweetener is comprised of erythritol. Even assuming that a reasonable consumer of the Sweeteners has a relatively high degree of sophistication regarding the health benefits of various sugar replacements, the Court cannot find, as a matter of law, that such a consumer would be armed with this information, and would make the necessary deduction, in order to not be misled by the front and back label of the product.[3] Grimbaldeston has adequately alleged that a reasonable consumer would be misled by the Sweetener's front and back labels.

***Preemption***. None of Grimbaldeston's claims are preempted by Federal Food, Drug, and Cosmetic Act ("FDCA"). Pursuant to the FDCA, the Food and Drug Administration ("FDA") regulates ingredient list and nutrition box information, among other information on food packaging, and these regulations can preempt certain state and common law claims. *See* 21

---

[3] Another statement on the label indicating the product contains "zero net carbs" would also require a complex series of deductions to dispel the plausibly misleading impression created by other statements on the label, and likewise is not curative.

7

C.F.R. §§ 101.2(b), 101.4(a)(1), 101.9; *see also Broussard v. Dole Packaged Foods, LLC*, No. 23-cv-03320-HSG, 2024 WL 1540221, at *6 (N.D. Cal. Apr. 8, 2024) (stating that "courts have found labeling claims barred where plaintiffs seek a court order imposing labeling requirements that differ from or layer onto the FDCA's requirements"). But Grimbaldeston is not challenging the information in the ingredient list or nutritional box. Instead, as discussed above, Grimbaldeston alleges that the product name on the front label of the package and the description of monk fruit's properties on the back label are misleading, even when read in the context of the FDA-required information. The claims are not preempted. *See Tobin*, 2024 WL 1560050, at *3–4.

*Express Warranty Claim*. Grimbaldeston has plausibly alleged a breach of express warranty claim for the same reasons that the reasonable consumer standard is satisfied. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) (collecting cases finding that satisfaction of the reasonable consumer standard meant plaintiff had stated a claim for breach of express warranty). The prominent use of the term "Monk Fruit" on the front label and the discussion of monk fruit's benefits on the back of the label, taken together, plausibly constitute an affirmation of fact or promise regarding the amount of monk fruit contained in the Sweetener.

*Quasi-Contract Claim*. Saraya challenges the quasi-contract claim as duplicative of the statutory claims. But a Plaintiff "may pursue quasi-contract and [statutory claims] in the alternative at the pleading stage." *See M. H. v. Done Glob. Inc.*, No. 24-cv-03040-RFL, 2025 WL 629613, at *3 (N.D. Cal. Feb. 26, 2025) (citing Fed. R. Civ. P. 8(d)(2)–(3)). Saraya's argument regarding the availability of equitable remedies is discussed separately, below.

*CLRA Pre-Suit Notice*. California Civil Code § 1782(a) requires "the consumer" to provide notice of complained of methods, acts, or practices to a defendant prior to filing suit. It is undisputed that Grimbaldeston did not provide notice to Saraya prior to filing suit. But Grimbaldeston argues that he has complied with the pre-suit notice requirement because his attorney previously provided notice to Saraya related to the Sweeteners' labels on behalf of

another individual, Thomas Jankas, who is not party to this action, and stated Jankas' intent to bring a putative class action suit.  (Dkt. No. 22 at 9.)  The plain language of the statute forecloses this argument.  Nothing in the statute permits "the consumer" to file suit without providing the required notice, so long as he identifies another consumer who provided adequate notice of the same violation he intends to complain of.  Moreover, "[t]he clear intent of the act is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." *Outboard Marine Corp. v. Superior Ct.*, 124 Cal. Rptr. 852, 859 (Ct. App. 1975).  This goal is undercut if—while a company is working in good faith with one consumer to resolve a complaint, but has not yet satisfied the requirements of section 1782(b)—another consumer can swoop in and file a lawsuit based on the first consumer's notice.  Similarly, the rule Grimbaldeston proposed would allow consumers to file lawsuits based on others' stale or abandoned notices.  This is inconsistent with the intent of the statute.

Therefore, the CLRA claim is dismissed.  Dismissal is with leave to amend "so that a plaintiff may provide proper notice before filing an amended complaint."  *See Scott v. Saraya USA, Inc.*, 675 F. Supp. 3d 1040, 1052 (N.D. Cal. 2023) (collecting cases allowing plaintiffs to correct deficient CLRA notices).  Nor is amendment futile because Grimbaldeston otherwise adequately states a CLRA claim for the reasons stated above, and with respect to the relief sought, as further detailed below.

*Relief-related Arguments*.  Saraya mounts a variety of challenges to the relief that Grimbaldeston seeks.  Each of these challenges is rejected for the reasons explained below.

<u>Restitution under the UCL and FAL and actual damages under the CLRA</u>.  Grimbaldeston alleges that had he "known at the time of purchase that the Representations were false and misleading, [he] would not have purchased the Products or would have paid less for them."  (Dkt. No. 1 ¶ 59.)   This is sufficient at the pleadings stage.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963, 965–66 (9th Cir. 2018).  Defendants cite no authority for the proposition that a plaintiff must allege a specific "price/value differential" at the pleadings stage

9

in order to state a claim under the UCL, FAL, or CLRA.[4]

Standing for injunctive relief. Grimbaldeston has established standing to seek injunctive relief. He asserts that he "would like to purchase the Products in the future if they contained a substantial amount of monk fruit," but because the product labels are misleading, he has no way of knowing if the content of monk fruit in the Sweeteners has increased. (Dkt. No. 1 ¶¶ 61–63.) This is sufficient to plausibly give rise to standing. A "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase" because the customer might later "reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d 969–70 ("Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future."). Grimbaldeston alleges that he is such a consumer, and therefore plausibly faces actual and imminent, not conjectural or hypothetical, threat of future harm and may seek injunctive relief.

Availability of equitable remedies. Grimbaldeston has adequately alleged, at the pleading stage, that the available legal remedies are insufficient and he is entitled to seek equitable remedies. With respect to injunctive relief, damages cannot remedy the future harm that Grimbaldeston plausibly alleges that he faces. (Dkt. No. 1 ¶ 113.) With respect to the request for restitution, the complaint alleges that restitutionary disgorgement alone allows for the recovery of lost interest, which would be unavailable through purely legal relief. (*Id.* ¶ 110.) Saraya does not dispute this fact. At the pleading stage, this is sufficient to render the available legal remedies are insufficient. *See*, *e.g.*, *Barton v. Procter & Gamble Co.*, No. 24-cv-01332, 2025 WL 2307686, at *11 (S.D. Cal. Aug. 8, 2025).

Prayer for Punitive Damages. Because punitive damages are not a claim, they are not the proper subject of a motion to dismiss. *See Apple, Inc. v. Starr Surplus Lines Ins. Co.,* No. 24-cv-

---

[4] Because Grimbaldeston asserts that he "does not seek 'profits' beyond damages associated with the purchase of the Products" for his statutory claims (Dkt. No. 25 at 23), this Order does not reach Saraya's nonrestitutionary disgorgement arguments.

03738-RFL, 2024 WL 4834424, at *1 (N.D. Cal. Nov. 18, 2024).  Therefore, the Court does not reach Saraya's arguments regarding the request for punitive damages at this time.

*Conclusion*. For the reasons discussed above, the motion to transfer venue is **DENIED**, and the motion to dismiss is **GRANTED** as to the CLRA claim and otherwise **DENIED**.  Any amended complaint shall be filed by **January 21, 2025**.  If Grimbaldeston does not file an amended complaint by that date, the case will proceed on the initial Complaint.

    **IT IS SO ORDERED.**

Dated: December 17, 2025

                                                 RITA F. LIN
                                                 United States District Judge